BUCKNALL et al. v. ORFORD COPPER CO.

(District Court, S. D. New York. April 1, 1903.)

1. SHIPPING—STEVEDORING RATES—DEMURRAGE.
    Stevedoring rates for discharging cargo, and liability for demurrage
    under a charter, determined on the facts.

In Admiralty. Action against charterer to recover balance of freight and demurrage.

Convers & Kirlin, for libellants.

Stayton & Campbell, for respondent.

ADAMS, District Judge. This is an action brought by the libellants, the chartered owners of the Steamship Cereda, to recover a balance of freight and some demurrage alleged to be due under a charter from them to James Morrison & Co., Ltd., dated October 17, 1900. The charter provided that the steamship should transport a cargo of about 3000 tons of ore in bulk from Kataviti, New Caledonia, to New York direct and deliver the same at such dock or wharf as the charterer should order at an agreed rate of freight, "the ship to be discharged with all dispatch as customary for steamers at the port of discharge, the said charterers or their agents to have the option of keeping the said ship ten days on demurrage at six pence per registered·ton per day. * * *" This agreement was modified on November 20, 1900, so as to reduce the rate of freight to 40 shillings per ton and the demurrage rate for the first five days to 3 pence. The steamship loaded under this agreement a cargo of some 3037 tons, for which a bill of lading was signed December 17, 1900, and she arrived with the cargo at New York on Sunday, March 10, 1901. On March 11, the steamship was entered at the Custom House and notice of her readiness to deliver cargo was duly served on the respondent, who had become the holder of the bill of lading and consignee of the cargo. On the afternoon of the same day, the respondent gave orders for the steamer to proceed for discharge to the pier of the respondent at Constable Hook, New Jersey. The unloading commenced on March 13, at 11 o'clock A. M. and was completed on March 21 at 3 o'clock A. M.

A dispute arose between the parties with respect to a deduction by the respondent of 40 cents per ton for stevedoring, the libellants claiming that the deduction was 10 cents per ton in excess of the current rate, making a difference of $303.93; also with respect to demurrage, the libellant claiming 4 days and 15 hours at 6 pence per ton, amounting to $904.48, making in all $1208.41. The whole claim is contested by the respondent.

It appears that a stevedoring rate for discharging was not fixed by the charter party. The evidence shows that a memorandum was given by the respondent's agent to the libellants' agent about the time the discharging commenced, in which 40c per ton was men-

¶ 1. Demurrage, see notes to Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

tioned as the rate the stevedoring would be charged at and although it does not appear that this rate was specifically agreed to, it seems that it was assented to and it was expected that such rate would be charged. Moreover, it is not shown that such charge was an unfair one in view of the actual cost of labor and power and considering the wear and tear of apparatus. I conclude that the respondent's deduction was justified.

With respect to demurrage, it appears that the vessel was in the berth to which she had been ordered by the respondent at 11 o'clock on Tuesday, March 12, and that the cargo was discharged as above stated. There was some unwarranted delay in the discharging, which the respondent seeks to avoid responsibility for, through an endorsement on the bill of lading, signed by the master of the steamship and the charterers' agent at Kataviti, as follows:

"The loading of the cargo was completed on the ——— day of December at noon. All time allowances as per charter party to be deducted and demurrage, if any, to be settled between charterer and Messrs. Bucknall Bros. in accordance with Charter Party."

This apparently related to any demurrage that might have been due in the loading and does not affect the consignee's liability for default in discharging, under the terms of the charter party as modified.

Decree for the libellants, with an order of reference to determine the amount of demurrage due at the rate of 3 pence per ton.